NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUZ MENDOZA SANTIAGO, as Administratix Ad Prosequendum and Administratix of the Estate of her daughter, JOANNE FIGUEROA,<br><br>Plaintiff,<br><br>v.<br><br>HUDSON COUNTY, et al.<br><br>Defendants. | Civil Action No.: 10-3059<br><br><u>**OPINION**</u> |

**SHERIDAN, U.S.D.J.**

This matter is before the Court on two motions: (1) Defendants Prison Health Services, Inc. and Correctional Health Services, LLC's (collectively, "CHS") motion for partial summary judgment ("CHS' Motion"); and (2) Plaintiff Luz Mendoza Santiago, as Administratix Ad Prosequendum and Administratix of the Estate of her daughter, Joanne Figueroa's ("Plaintiff") cross-motion for an additional 60 days to serve an affidavit of merit ("Plaintiff's Cross-Motion"). On or about June 2, 2010, Plaintiff filed a complaint in the Superior Court of New Jersey, Law Division ("Plaintiff's Complaint"). Plaintiff sets forth three different causes of action in Plaintiff's Complaint: (1) a violation of Title 42 Section 1983; (2) medical malpractice; and (3) wrongful death. On June 16, 2010, CHS removed Plaintiff's Complaint to this Court.

For the reasons set forth below, this Court denies CHS' Motion without prejudice. As a result, Plaintiff's Cross-Motion is rendered moot.

1

# I

Beginning on June 28, 2008 and continuing through July 8, 2008, Joanne Figueroa ("Ms. Figueroa") was incarcerated as an inmate at Defendant Hudson County Correctional Facility ("HCCF"). According to Plaintiff, on July 8, 2008, Ms. Figueroa exhibited signs and symptoms of a serious medical condition, including, but not limited to, vomiting blood. Plaintiff maintains that Ms. Figueroa vomited blood for several hours while she was in the custody of HCCF.[1] Realizing that Ms. Figueroa was suffering from a medical emergency, the HCCF staff called a "Code White." The HCCF staff moved Ms. Figueroa from the Women's Tier to the medical unit, where nurses employed by HCCF examined Ms. Figueroa and administered cough syrup and Motrin before returning Ms. Figueroa to the Women's Tier.

Ms. Figueroa's condition continued to deteriorate after she was returned to the Women's Tier. At 6:21 a.m., Ms. Figueroa collapsed. Ms. Figueroa's collapse prompted the HCCF staff to call a second "Code White" and to call for an ambulance to transport Ms. Figueroa to the

---

[1] Both parties appear to agree that Ms. Figueroa was in the custody of HCCF. CHS has also admitted, however, that certain CHS employees provided medical attention to Ms. Figueroa. For example, CHS has conceded in its responses to interrogatories that a physician assistant – Joseph Deraville – "provided medical care to [Ms. Figueroa] on July 7, 2008." Moreover, CHS also admitted that a doctor employed by CHS – Dr. Graciano Zara – provided some form of supervision. In fact, Dr. Graciano Zara displayed his supervision of the medical treatment of Ms. Figueroa by writing the following note regarding Ms. Figueroa's condition on July 7, 2008, at approximately 6:40 a.m.: "Told by C.O. Thompson to go E6S. Arrived, Nurse Maggie doing CPR and Nurse xxx assisting. Inmate pupils dilated, not responsive xxx. External Automated Defibrillator on red applied. No response. EMT arrived took inmate to hospital."

Jersey City Medical Center. At 7:37 a.m., the Jersey City Medical Center staff pronounced Ms. Figueroa dead.

As a result of Ms. Figueroa's death, Plaintiff filed a complaint on June 2, 2010. The complaint alleges three counts, including a Section 1983 action, a malpractice claim[2] and a wrongful death claim. Plaintiff maintains that CHS "knew or should have learned that [Ms. Figueroa] had an aorta esophageal fistula that was causing her to bleed to death over several hours and [that Ms. Figueroa] needed emergent medical treatment." Moreover, Plaintiff additionally contends that CHS:

> failed to properly diagnose, treat, and report symptoms that could have lead to a timely diagnosis of an aorta esophageal fistula causing exsanguination and/or failed to properly anticipate that her condition was causing her to bleed to death, resulting in lack of prompt medical treatment that would have either prevented Plaintiff's ensuing medical deterioration and ultimate death, or would have substantially increased the probability that timely medical treatment would have saved her life.

In addition, Plaintiff asserts that all defendants in this case "failed to provide proper medical care and treatment and access to proper medical care and treatment." Within sixty days of Plaintiff's Complaint, Plaintiff provided CHS with an affidavit of merit of Bonnie Tadrick, a registered nurse. She opined that "there exists a reasonable probability that the care, skill, or knowledge

---

[2] Plaintiff never specifically characterizes Plaintiff's second count as a medical malpractice cause of action. Despite this, this Court is convinced that the second count is a medical malpractice cause of action. "[A]n[y] action against a physician by a patient for damages for injuries received by reason of the alleged negligence of the doctor in professionally treating the patient is, by its very nature, a malpractice action." *Barbire v. Wry*, 75 N.J. Super. 327, 335 (App. Div. 1962). Because Plaintiff's second count makes clear reference to alleged negligence, it shall be considered a medical malpractice cause of action.

exercised or exhibited in the treatment, practice, or work performed by the [HCCF] staff[3] . . . fell outside acceptable standards of practice."  According to CHS, the affidavit of merit is insufficient because CHS only employs physicians, physician assistants and nurse practitioners; hence, the opinion of Ms. Tadrick, a registered nurse, is insufficient.

## II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Such a fact is considered material only if the fact may affect the outcome of the litigation based upon the substantive law. *Ibid.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party "must produce specific facts showing that there is a genuine issue for trial." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985) (citation omitted).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary

---

[3] This Court acknowledges that Bonnie Tadrick's affidavit of merit singled out the HCCF staff's treatment of Ms. Figueroa, *not* the CHS staff's medical care.  At this stage in the litigation, however, this Court is unconvinced that this specificity was intentional.  As such, this Court interprets Bonnie Tadrick's affidavit of merit to refer to the medical staff employed by both HCCF and CHS.

judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (*citing* Fed. R. Civ. P. 56(e)).

CHS seeks summary judgment on two counts: (1) Plaintiff's medical malpractice cause of action; and (2) Plaintiff's wrongful death cause of action. In particular, CHS contends that these causes of action may not proceed because Plaintiff failed to serve a proper "affidavit of merit."

## III

In order to pursue claims of malpractice or wrongful death, a plaintiff generally must serve an affidavit of merit by an appropriate licensed person within 60 days of a defendant's answer:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c.17 (C.2A:53A-41).

N.J.S.A. § 2A:53A-27.  This procedural requirement obligates plaintiffs "to make a threshold showing that their claim[s] [are] meritorious" and ensures that "meritless lawsuits readily [can]

5

be identified at an early stage of litigation." *In re Hall*, 147 N.J. 379, 391 (1997) (citation omitted).

The Affidavit of Merit Statute "was enacted as part of a tort reform package designed to strike [] a fair balance between preserving a person's right to sue and controlling nuisance suits." *Palanque v. Lambert-Woolley*, 168 N.J. 398, 404 (2001) (internal quotation marks and citation omitted). "In professional malpractice actions plaintiffs are required to provide an affidavit from an appropriate licensed professional attesting to the merit of plaintiffs' claims." *Ibid.* The intent of the statute is to "curtail frivolous litigation without preventing access to the courts for meritorious claims." *Ibid.* (citation omitted). Thus, a "[f]ailure to comply with the statute, either strictly or substantially, will result in dismissal with prejudice, unless an exception applies." *Boerger v. Commerce Ins. Servs.*, 2005 WL 2901903, at *2 (D.N.J. Nov. 1, 2005) (internal quotation marks and citation omitted).

To determine whether the Affidavit of Merit Statute applies, a court must consider three factors: "(1) whether the action is for damages for personal injuries, wrongful death or property damage (nature of injury); (2) whether the action is for malpractice or negligence (cause of action); and (3) whether the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices (standard of care)." *N.H. Ins. Co. v. Diller*, 678 F. Supp. 2d 288, 308 (D.N.J. 2010) (quoting *Couri v. Gardner*, 173 N.J. 328 (2002)) (internal quotation marks omitted). The affiant must be "licensed as a physician or other health care professional." N.J.S.A. § 2A:53A-41. In addition, the affiant generally must specialize in a particular area or must "devote[] a majority of his professional time" to "[an] active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action," *and/or*

6

"the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed." *Ibid.*

Here, CHS argues that the affidavit of merit from the registered nurse (Bonnie Tadrick) is insufficient because CHS only hires physicians, physician assistants and nurse practitioners; hence, Bonnie Tadrick, a registered nurse, is not "an appropriate licensed person" as required by statute. The purpose of the affidavit of merit is to weed out frivolous litigation, usually in cases where a plaintiff has been unable to retain an expert to support a malpractice claim. Here, there is an affidavit by a registered nurse indicating that there exists a "reasonable probability" that the treatment of the medical staff was "outside acceptable standards of practice." This is sufficient to show that the suit was not frivolously brought.

Moreover, it is unknown whether a registered nurse is substantially different from a nurse practitioner or physician assistant. There is no information about Bonnie Tadrick's qualifications to confirm her expertise; nor the expertise of the nurse practitioner or physician assistant. As such, CHS bears the burden to distinguish Bonnie Tadrick from its employees on a motion for summary judgment, and it has not met that standard. The proof may be resolved through discovery. Hence, CHS' Motion is denied without prejudice, and may be re-filed, if appropriate.

## IV

For the reasons set forth above, this Court denies CHS' motion without prejudice. As such, Plaintiff's Cross-Motion is rendered moot.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

May 18, 2011

8